# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANTHONY DIVIRGILIO,**

           **Plaintiff,**

**v.**                                 **Case No:   6:19-cv-1055-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

           **Defendant.**

_____

# MEMORANDUM OF DECISION

Anthony Divirgilio (the "Claimant") appeals a final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for Social Security Disability Benefits. Doc. No. 1. Claimant alleges a disability onset date of March 31, 1998. R. 619. Claimant argues that: 1) the Administrative Law Judge (the "ALJ") erred in formulating his Residual Functional Capacity ("RFC") by failing to properly evaluate medical opinions; and 2) the ALJ failed to properly evaluate Claimant's testimony. Doc. No. 27 at 14-24. Upon consideration of the parties' arguments and the record, the final decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.    <u>STANDARD OF REVIEW.</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision

is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.   <u>BACKGROUND.</u>

The ALJ found that Claimant had the following severe impairments:  degenerative disc disease of the lumbar spine, migraines, gout, and diverticulitis.  R. 621.  The ALJ found that despite these impairments Claimant could perform:

> less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).  Specifically, the claimant can lift and/or carry ten pounds occasionally, and less than ten pounds frequently, sit for six hours and stand and/or walk for two hours, in an eight hour workday. The claimant would need a sit/stand option.  The claimant should not work at heights, and could occasionally perform postural maneuvers.

R. 622.

The parties do not dispute Claimant's severe impairments cause limitations in his abilities to stand, walk, and sit, that much is clear.   In fact, the ALJ found Claimant would need a job with a sit/stand option. Where things become less clear is the total duration, frequency, and intervals for which Claimant may be able to stand, walk, and sit, need to lie down, and may need to alternate between these positions.   Claimant alleges two errors by the ALJ: 1) an error in weighing the

medical opinions which led to a conflict between the medical opinions and the RFC; and 2) an error in evaluating Claimant's credibility regarding functional limitations.  For the reasons set forth below, the Court finds Claimant's first alleged error requires reversal and remand.

       A.     *The Medical Opinions*

The ALJ addressed medical opinions from one treating physician, Dr. Wolpin; two examining physicians, Dr. Reina and Dr. Sussman; and one non-examining physician, Dr. Gilman, who testified at Claimant's hearing.  R. 623-26.  Their opinions and the weight they were given by the ALJ can be summarized as follows:

       1.     Treating Physician Dr. Wolpin

Dr. Wolpin began treating Claimant for a recurrence of a back injury that happened while Claimant was working as an electrician.  R. 349, 623.   Claimant was working on a limited basis as an electrician when he began treating with Dr. Wolpin after he reinjured his back in early 1998. R. 349, 623.   Dr. Wolpin opined multiple times that Claimant was disabled, but also opined, at the same time, that Claimant was capable of light duty work.  R. 623-24.   In March of 1998, Dr. Wolpin noted Claimant was working light duty part-time, and opined Claimant could do light duty work so long as he limited his lifting and bending and that he was disabled.   R.   349.   Yet, Dr. Wolpin also opined claimant was disabled.   *Id.*   In June of 1998, he opined Claimant could do light duty work limited to less than 20 pounds with frequent rest periods otherwise he was disabled. R. 350.   In a July 31, 1998, letter Dr. Wolpin noted that Claimant: "cannot do activities that require him to do any lifting or bending"; his daily activities require him to change position frequently and will even need to lie down to lessen back strain; and these conditions "will not change in the future and there is no surgical indication."   R. 347-48. The ALJ gave Dr. Wolpin's first two opinions little weight because of inconsistency between his statement that Claimant could do "light work"

and his statements that he was disabled.   R. 624.   The ALJ gave little weight to Dr. Wolpin's opinions that Claimant must avoid all bending and lifting and would need to change positions and lie down as they were not supported by the medical record and inconsistent with the doctor's own opinion regarding Claimant's ability to do light duty so long as he limits lifting and bending.   R. 624.   Finally, the ALJ gave "some weight" to Dr. Wolpin's opinion that Claimant would need frequent rest periods and could not stand more than about 30 minutes.   R. 625.

>               2.        Examining Physician Dr. Reina

Dr. Reina examined Claimant on August 5, 1998 for an independent medical evaluation for worker's compensation.   R. 362.   Dr. Reina opined that Claimant's "work restrictions would be significant," including "flexibility with posturing, standing less than 10 to 15 minutes at a time being permitted to sit and/or stand after these periods have been exceeded, driving distances less than 30 to 60 minutes with permission to stop for postural adjustment since prolong[ed] sitting will increase pain and interfere with possible right foot neurological function, if not distract him from the sciatic neuritis." R. 366.   The ALJ gave great weight to Dr. Reina's opinion.   R. 627.

>               3.        Examining Physician Dr. Sussman

Dr. Sussman examined Claimant in November 1998.   R. 355.   Dr. Sussman opined that Claimant could do work with "certain limitations" which were indicated on an enclosed pre-printed form.   R. 356.   Dr. Sussman opined Claimant could stand and walk one to two hours cumulatively in an eight hour day.   R. 359.   Dr. Sussman also opined Claimant could sit two hours total in a day.   R. 359.   The ALJ gave the portion of Dr. Sussman's opinion that Claimant could do some work with limitations great weight and gave the portion of his opinion regarding what those limitations were some weight because it was mostly consistent with the record, but also

stated Dr. Sussman did not explain or support his opinion that Claimant was limited to two hours of sitting per eight hours.   R. 626.

> 4.      Non-Examining, Testifying Physician Dr. Gilman[1]

Dr. Gilman testified Claimant would be able to perform sedentary work with a sit/stand option.   R. 694, 696.   Dr. Gilman agreed that Claimant would be required to change positions "frequently," and need to lie down to lessen back strain but could not say how frequently he would have to lie down.   R. 696.   Dr. Gilman opined Claimant could stand 15 to 30 minutes at a time for up to two hours a day.   R. 696-7.   Dr. Gilman agreed that prolonged sitting would increase Claimant's pain but indicated that Claimant could sit up to six hours a day.   R. 698. The ALJ gave Dr. Gilman's opinion great weight.   R. 628.

> B.      The RFC Finding

After summarizing the medical opinions and giving great weight to the opinions of Drs. Reina and Dr. Gilman, the ALJ found the Claimant had the RFC to perform less than a full range of sedentary work. Claimant would need a sit-stand option, could lift and/or carry ten pounds occasionally, less than ten pounds frequently, sit for six hours and stand and/or walk for two hours in an eight hour workday, not work at heights and could occasionally perform postural maneuvers. R. 622.   The ALJ reasoned that the RFC would be a "sit/stand option at the sedentary level," and Claimant "would largely be sitting with a sedentary job, allowing for changing of sitting to standing, and standing to sitting." R. 625.

---

[1] Dr. Gilman's name is spelled two different ways in the record: Gilman and Gillman. The Court will adopt Gilman as that is the spelling reflected in the transcript of the administrative hearing.   R. 694.

## III.  <u>ANALYSIS</u>

The ALJ gave great weight to the opinions of Dr. Reina and Dr. Gilman.  R. 627-28.
Claimant argues that the ALJ failed to fully account for those opinions in making his RFC finding
and that the RFC conflicts with the opinions.  Doc. No 27 at 14–20.  The Court agrees.

The ALJ's RFC conflicts with the opinions of Drs. Reina and Gilman, as well as Dr.
Sussman's opinion, all of which opined Claimant had limitations in sitting.  R 366, 696-98, 359.[2]
Even focusing solely on the opinions of Drs. Reina and Gilman, which were given great weight,
the RFC fails to account for their opinions that Claimant has a limited ability to engage in
prolonged sitting.  R 366, 698.  The ALJ himself described the RFC as "largely sitting with a
sedentary job" and it calls for six hours of sitting during the workday.  R. 622, 625.

Dr. Reina's opinion was that Claimant has significant limitations, including that he would
need: 1) flexibility with posturing; 2) standing less than 10 to 15 minutes at a time; 3) a sit/stand
after that time is exceeded; and 4) driving distances less than 30 to 60 minutes (with permission to
stop for postural adjustments) due to prolonged sitting increasing Claimant's pain.  R. 366.  Dr.
Gilman testified that Claimant would need to change positions frequently and lie down.  R. 696-
97.  He also opined prolonged sitting would cause the Claimant pain and a sit-stand option was
reasonable.  R. 698.

---

[2] Although Drs. Wolpin, Reina, Gilman and Sussman unanimously agreed Claimant had limitations in sitting the ALJ
found sitting six hours in an eight hour workday was appropriate.  R. 348 ("change positions frequently and will even
need to lie down"); R. 366 ("with permission to stop … since prolonged sitting will increase pain"); R. 696 ("needing
to change positions frequently and … lie down" … "prolonged sitting would increase his pain"); R. 358 (sit 2 hours
per 8 hour workday).  Dr. Reina's opinion arguably attempts to quantify Claimant's sitting limitations by saying he
is limited to driving less than 30 to 60 minutes "with permission to stop for postural adjustment since prolonged sitting
with increase pain…." R. 366.  The only other medical opinion in the record that attempted to quantify that
limitation, Dr. Sussman's opinion that Claimant would be limited to two hours of sitting in an eight hour workday,
was rejected by the ALJ.  R. 356-59.  Dr. Sussman is a one-time examining physician and, therefore, his opinion is
not entitled to deference.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  The ALJ found that "Dr.
Sussman did not explain, nor was there support, as to why sitting would be limited to two hours."  R. 626.

The ALJ seems to have reduced the specifics of Dr. Reina and Dr. Gilman's opinions regarding postural limitations to – sedentary, with a sit/stand option, sitting for six hours and standing/walking for two, in an eight hour workday.   R. 622.   The time limitation on durations for standing, the frequency of changing positions, the limitation on prolonged sitting, and the need to lie down which are contained in the opinions that were given great weight are not reflected in the RFC. [3]

Additionally, Dr. Reina's opinion contains substantial limitations that are not addressed by Dr. Gilman's opinion and, therefore, those opinions are conflicting.   A central function of the ALJ is to weigh the medical opinions in the record and to resolve any conflicts between such opinions. *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) ("The ALJ's task is to examine the evidence and resolve conflicting reports").   The ALJ failed to identify and address those conflicts in establishing the RFC.   For example, in addition to the sit/stand option Dr. Reina indicated Claimant could stand less than 10 to 15 minutes at a time and that prolonged sitting would also be problematic.   R. 366.   Dr. Gilman testified that he thought a sit/stand option was reasonable given that prolonged sitting would increase Claimant's pain.   R. 698.   However, that does not resolve the conflict between Dr. Gilman's opinion and Dr. Reina's opinion, which includes several other postural limitations in addition to a sit/stand option. [4]   R. 366.   Such conflicts in medical opinions

---

[3]The Court has considered whether the ALJ's errors in weighing the medical opinions and making the RFC finding are harmless errors and finds that those errors are not harmless because the RFC does not include the limitations contained in the doctors' opinions that were given great weight.   *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (finding that because the ALJ did not consider certain factors "and their impact on his ultimate conclusion as to Moore's RFC," the court could not "even evaluate the Commissioner's contention that the ALJ's error was harmless")); *Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 870 (11th Cir. 2016) ("We cannot say that the ALJ's error was harmless when the ALJ failed to discuss an examining physician's opinion... as the error could have altered Baez's RFC.").   The Court also notes that the VE testified that if Claimant required a sit/stand option the frequency with which Claimant would need to change postures and/or need to lie down could impact the jobs available to him. R. 714 -16.

[4]   Similar to Dr. Reina, Dr. Sussman opined Claimant had significant limitations on his ability to sit.   R. 359, 626. One of the options available in his evaluation form, which Dr. Sussman did <u>not</u> select, was "8 Hours with alternating sit/stand at his/her option."   R. 359.

are for the ALJ to resolve on legitimate bases supported by substantial evidence.  *Id.*  Because the ALJ failed to recognize the conflict, he offered no justification for rejecting the other relevant portions of Dr. Reina's opinion and giving a non-examining physician's opinion greater weight. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (a non-examining doctor's assessment that contradicts an examining doctor's medical report is given little weight and cannot, standing alone, constitute substantial evidence.).

To give great weight to opinions and not incorporate the limitations they contain into the RFC without explanation is reversible error. *William v. Saul*, No. 8:18-CV-2402-T-AEP, 2020 WL 1527855, at *7 (M.D. Fla. Mar. 31, 2020) (citing *Rosario v. Comm'r of Soc. Sec.*, No. 6:12-cv-1687-Orl-GJK, 2014 WL 667797, at *3 (M.D. Fla. Feb. 20, 2014) (court found that having given significant weight to the opinions of state agency psychological consultants and seemingly crediting another expert's social restriction, the ALJ should have either explicitly included all limitations in the RFC finding or explained how their limitations were otherwise implicitly accounted for in the same. Because the ALJ did neither, the decision was not supported by substantial evidence).   Similarly, the failure to recognize a conflict between opinions is reversible error as well. *Wolfe*, 86 F.3d at 1079.

As such, these deficiencies require reversal and remand.[5]

## III.    <u>CONCLUSION.</u>

For the reasons stated above, it is **ORDERED** that:

---

[5] Because this matter will be remanded, the Court will not address the remaining errors ascribed to the ALJ's decision.   The ALJ will have to reweigh the evidence upon remand and may reconsider the issues raised by Claimant.   *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be revered due to other dispositive errors).

1. This matter is **REVERSED** and **REMANDED** to the Commissioner for further

   proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter a separate judgment in favor of Plaintiff and to

   close the case.

**DONE** and **ORDERED** in Orlando, Florida, on August 11, 2020.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Bradley K. Boyd, Esq.
1310 W. Eau Gallie Boulevard
Suite D
Melbourne, FL 32935

Maria Chapa Lopez
United States Attorney
John F. Rudy, III
Assistant United States Attorney
400 N. Tampa St.
Suite 3200
Tampa, FL 33602

Christopher G. Harris, Regional Chief Counsel
John C. Stoner, Acting Regional Deputy Chief Counsel
Jerome Albanese, Branch Chief
Laura Verduci, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable James Andres
Administrative Law Judge
Office of Disability Adjudication and Review
SSA ODAR Hearing Office
Suite 1000, 10th Floor
Ft. Lauderdale, FL 33394-3026